ALTAGRACIA SANTOS, ETC., ET AL., Plaintiffs and Appellees-Appellants *v.* THE FAJARDO DEVELOPMENT Co., Defendant and Appellant-Appellee.

No. 5581. Argued December 4, 1931.—Decided March 16, 1933.

*Jaime Sifre, Jr.*, and *Horacio Franceschi* for appellant-appellee. *Bolívar Pagán* for appellees-appellants.

Mr. Justice Aldrey delivered the opinion of the Court.

Francisco Correa died while married to Altagracia Santos, with whom he had several children who were minors when he died. His widow, for herself and on behalf of said children, brought an action against the Fajardo Development Co. to recover damages in the sum of $15,000 for the death of Francisco Correa, claimed to have been caused through the negligence of employees of the defendant. The judgment entered in this action adjudged the defendant to pay $3,000 without costs, and both parties appealed therefrom: the defendant, because it claims that it should not have been adjudged to pay anything; the plaintiffs, because they maintain that they are entitled to a greater award. Both appeals have been prosecuted and argued jointly. We shall first decide the appeal of the defendant.

According to the complaint, the death of Francisco Correa was caused by a railroad train of the defendant, while going from Fajardo to Río Grande, just before it arrived at the Mameyes station, at about eleven o'clock in the evening of March 8, 1929. According to the defendant, at that hour and on that date, no accident took place, but when said train was returning from Fajardo, just before reaching the Mameyes station, at one o'clock in the morning of March 9, 1929, the engineer of the train saw an object on the railroad track without being able to determine what it was and tried to stop the train without succeeding in doing it until after it ran over said object, which subsequently was found to be the body of Francisco Correa. The court below reached the conclusion that the occurrence took place at eleven o'clock in the evening as stated in the complaint. Although the defendant does not claim any error in this finding, however, it devotes the greater part of its argument under the first ground of appeal, which is based on other questions, to show that this conclusion of the court below cannot be sustained. After an examination of the evidence, we are of the opinion that said finding is correct, as the testimony of the only witness for the plaintiffs on this point is corroborated by the evidence of the defendant, since the head of the deceased was found at a place just before the Mameyes station, and the body run over by the train at one o'clock in the morning, was found headless at the other side of the station, some distance away. In view of this conclusion, we shall limit ourselves to the evidence concerning the train going from Fajardo to Río Grande which passed through said station at eleven o'clock in the evening, and to the other evidence related thereto.

The only witness to the accident which caused the death of Francisco Correa is Angel González, who was walking with the deceased that night. The others were brought to corroborate some of his testimony. Angel González, a man of 32 years of age, testified at the trial that between 10:30 and 11:00 o'clock in the evening of March 8, 1929, Correa

came with a bottle of milk to a small café where the witness worked, in the ward of Mameyes or Palmer of Río Grande and asked him for some black coffee to mix with the milk; that he inquired of the witness whether he was leaving immediately, to which the latter replied that he should wait a moment until he closed the establishment; that Carlos Pérez was there, too, and the three left, Carlos Pérez remaining at the entrance to the station, in a café belonging to Jesús Ríos. That Correa and the witness took the road that leads from the highway to the Mameyes station, and upon arriving within three or four meters of the railroad crossing, the witness stopped in order to light a cigarette, and Correa continued, but immediately he heard a noise and saw the train coming from Fajardo, at about eleven o'clock at night, at great speed, and that when he tried to call Correa, the train had already run over him; that the train continued without stopping; that it was moving at a speed of about eighty miles per hour; that there were no chains or gates at the crossing, no lights at the station, which was closed and without a caretaker; that the engine of the train did not sound the whistle; that the road on which they were walking is public and crosses the tracks; that that road is the one which he customarily uses to go to his home; that the train did not stop upon reaching this crossing; that after the train went by, he approached the track and saw the head of Correa, and that the rest of the body was carried by the train, and found the following day at a great distance away; that the night was dark; that he returned to town to spread the news; that the first person that he found was Carlos Pérez and they called other people and went to the place to see the body, and they stayed there until dawn; that there is a distance of about two or three kilometers from the café to the station; that the train cars were empty, which he was able to notice from the place where he stood; that it had about forty or fifty cars in front of the engine; that the engine carried no lights; that when the train has the cars in front, the noise cannot be

heard; that the station is on the other side of the road; that there is a policeman in town to whom they reported the accident; that he is a relative of Correa; that the latter lived by the side of the road, a little further away, and that a great many people use it.

The witness Carlos Pérez, who is 34 years old, corroborated, as far as he was concerned, the statements of González, and testified further that about ten to fifteen minutes after González left with Correa, the former returned with the news of Correa's death. A medical expert went to the place of the accident the next day and found the head at a distance of one foot from the left track, about ten to twelve meters from the station, and next to it, a bottle containing a liquid, apparently milk; that he had to walk over 200 meters to find the body which was torn to pieces and lay rather far from the head; that the death was caused by the severance of the head from the body by a heavy, cutting weight.

The Mayor of Río Grande testified that the road where Correa died is public and crosses the railroad tracks of the defendant, and that he has gone over it many times.

A witness for the defendant, Ramón Alonso, admitted the existence of said road which leads from the highway to the station and continues up to a farm and that the people go over it. That he also uses it.

The conductor of the train testified that they left the Central at Fajardo with several cars, which together with those picked up at San Miguel, amounted to 70 cars, and then began to distribute them at several sidings, continuing thereafter with 33 for Palmarejo; that before reaching this place, they passed by the station in Mameyes at about eleven o'clock in the evening; that the engine was in front of the cars, but he afterwards stated that the cars were in front of the engine; that it carried strong lights; that when they went by the Mameyes station it was closed and they did not stop, but did stop so at Colonia Blasina which was at some

distance from said station; that when they finished distributing the 33 cars at Palmarejo, they returned to pick up sugar cane until they had assembled 20 cars; that when they returned to Fajardo they had the train loaded with sugar cane; that about one o'clock in the morning, he saw an object and the train went over it because they were unable to stop it, but did so about 75, 80, or 100 meters before reaching the Mameyes Station; that this was the only accident they had that night; that frequently they put the cars in front of the engine and then they carried a small light on the front wagon to watch the sugar cane; that on that night, there were no lights at the station in Mameyes; that at the crossing where the accident took place there are no chains or gates to stop the traffic when the engine goes by; that the whistle is blown at the crossings; that the train did not stop at Mameyes when going to Fajardo and that on that night the train was not run with cars in front.

Patricio Navarro, the engineer of the train, testified that on that night, the engine had the front lights on; that he did not see any person on the track; that on returning to Fajardo about one o'clock in the morning, he saw an object on the track, and although he applied the brakes, the train ran over it and later it appeared to be a person whose head he did not see.

The station-master at Mameyes testified that no lights are lighted at night, and that at the place where a crossing is claimed to exist, there is a sign forbidding trespassing. Other witnesses did not refer to the fact of Correa's death. From this evidence it is concluded, among other things, that the death took place near the Mameyes station, on the side nearer to Fajardo, possibly to the east, and that the body was seen by the train's crew at one o'clock in the morning on the other side, the west.

By the first, second, and third grounds of appeal, the appellant claims that the court below erred in holding as proved by the plaintiffs that at the place of the accident, the

defendant's train was moving at a speed of 80 kilometers per hour, that it had from 40 to 50 empty cars in front of the engine, and that it carried no lights; also in holding that the defendant was negligent because the train was bound to reduce the speed at the place of the accident, and in sustaining the complaint without the plaintiff proving the alleged negligence.

The testimony of the only eyewitness to the accident, believed by the court below, proves that the train arrived at the place of the accident suddenly, without being seen or heard, at great speed, without sounding the alarm whistle, with 33 cars in front of the engine, and without lights, but although it may have had the front lights on, these could not light the road in front, as shown by the fact that when cars are placed in front, as is done frequently, a small light is placed on the first car; and that the train did not reduce its speed nor stop at the station in Mameyes. The employees of the defendant did not see Correa on or near the track nor did they see González, who was three or four meters away. These findings of fact convince us that there was negligence on the part of the employees of the defendant, as before crossing the said public road, they should have given some warning of their approach, by sounding the whistle or the bell, inasmuch as they could expect to find travelers on the road, especially since there were no barriers to guard the crossing nor lights to give warning of the approaching train, and they had a large number of cars before the engine. Therefore, the employees of the defendant were negligent. *Ferrer & Son* v. *American Railroad Co.*, 39 P.R.R. 36.

It is true that Correa knew of the existence of the railroad track at this point, but since no evidence was offered to show how he came upon the tracks, it must be supposed that he did so with due care because he saw no train nor heard its approach as Angel González did, for which reason the holding in the case of *Baltimore and Potomac Railroad Co.* v. *Landrigan,* 191 U. S. 461, cited in the *Ferrer* case,

*supra,* is applicable. This disposes of the fourth ground of appeal.

With respect to the fifth ground, we hold that the evidence of the plaintiffs, together with the testimony of some of the witnesses for the defendant, shows that there is a road used by the public in general at that place.

The sixth and last error is also nonexistent, because, although the place where Correa met his death was owned by the defendant, the truth is that a road exists there which is used by the public, and that it has been shown that the negligence of the employees of the defendant was the cause of Correa's death.

Let us consider now the appeal of the plaintiffs which is based on two grounds, namely: that the award of damages should have been for a larger amount, and that costs should have been imposed on the defendant. Correa was a man of 34 years of age who earned $9 per week as an ox-driver. In support of the first ground of appeal, the appellants cited several judgments of courts in the United States in which amounts of over $3,000 have been granted in cases similar to the present one, but which cannot serve us as guide because the general tendency of judgments of the insular courts have been very conservative concerning the amount of indemnity, taking into consideration, perhaps, that this is not a rich country. Furthermore, the indemnity allowed seems sufficient to us because when capitalized at the rate of twelve per cent per annum permitted by our laws, it would yield an income of $30 per month, which is almost the amount earned monthly by Correa when he worked. We are of the opinion that the amount granted is not clearly inadequate or contrary to law.

With respect to the error assigned because of the failure to impose costs on the defendant, we are unable to hold that the court below abused the discretion which the law allows it in this connection, since the mere fact that the defendant opposed the complaint, and that judgment was rendered

against it is not sufficient, of itself, to hold that there was obstinacy on its part in resisting the claim, for although the complaint was verified by the attorney, he did not state the same to be true of his own knowledge but on information furnished by another person, and the evidence at the trial showed that the employees of the defendant only knew that on returning to Fajardo at one o'clock in the morning they saw an object on the railroad track which later was found to be the body of Correa, and that they tried to avoid running over it, and did not realize that hours before, the train had killed Correa, for which reason the defendant was apparently justified in opposing the complaint. Moreover, the difference between the amount claimed as damages and the one granted by the judgment is so great that we should not hold that the court below abused its discretion in not imposing costs on the defendant. *Succn. of Toro* v. *Zambrana*, 27 P.R.R. 445; *Martínez* v. *Padilla*, 19 P.R.R. 555.

The judgment appealed from must be affirmed.

Mr. Justice Córdova Dávila took no part in the decision of this case.